IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 30 2013

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| MARGARITA AGUILAR, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:12-CV-070-A |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion for summary judgment
filed in the above-captioned action by defendant, United States
of America.  Defendant filed a brief in support of its motion, as
well as an appendix.  Plaintiffs, Margarita Aguilar
("Margarita"), individually as heir-at-law and personal
representative of the estate of Harry Wilson Aguilar, Sr.,
deceased ("Aguilar, Sr."); Harry Aguilar, Jr. ("Aguilar, Jr."),
Esmeralda Schwartz ("Schwartz"), and Juanita Ramos ("Ramos"),
individually and as heirs-at-law of the deceased, did not file a
substantive response to the motion.[1]  Having considered

---

[1] Plaintiffs filed a document entitled, "Plaintiffs' Response to Defendant's Motion for Summary Judgment," wherein plaintiffs stated that they "cannot present facts essential to justify their opposition" to defendant's motion, and sought more time for discovery.  The court noted that plaintiffs had already been given approximately eight months during which to conduct discovery and had only recently initiated the process of seeking to depose witnesses; however, the court gave plaintiffs additional time, until April 22, 2013, to take depositions and to file a response to the motion.  Plaintiffs failed to file any documents

plaintiff's complaint, the motion and accompanying documents, the entire summary judgment record, and applicable legal authorities, the court concludes that the motion should be granted.

## I.

### Plaintiff's Claims

Plaintiffs brought this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671, alleging that an agent of defendant "negligently, recklessly, and in violation of regulations and policy of defendant, shot and killed Harry Aguilar, Sr." while executing a search warrant and an arrest warrant in the apartment where plaintiffs resided.  Compl. at 3-4.  Plaintiffs seek damages in the amount of $1,683,840.00 for funeral expenses, lost earnings of Aguilar, Sr., and mental anguish.

## II.

### The Summary Judgment Motion

Defendant argues for summary judgment on the grounds that the actions of its agent were reasonable and justified, and that such a conclusion is supported by:

> (1) Defendant's undisputed expert conclusion that the use of deadly force was reasonable under the circumstances; (2) pre-operation intelligence warning agents of Aguilar, Jr.'s criminal history and

---

by the April 22 deadline or by the date of the signing of this memorandum opinion and order.

propensity to carry firearms; (3) eyewitness accounts;
(4) corroborating witnesses; and (5) forensic evidence.

Mot. at 2.  Defendant argues that it is immune from civil

liability under the Texas Penal Code because the agent's use of

deadly force was justified.  Defendant also argues that the

motion should be granted because plaintiffs failed to procure

expert testimony to establish the standard of care applicable to

defendant's agents.

III.

Undisputed Facts[2]

Beginning in January 2007, the Federal Bureau of

Investigation's ("FBI") Violent Crime/Gang Task Force was

investigating the Texas Syndicate ("TS") prison gang and the

various criminal activities of its members, including Aguilar,

Jr., a documented member and local leader in the Fort Worth,

Texas area.  App. at 2, 4.  The task force included law

enforcement officers from the FBI, Bureau of Alcohol, Tobacco,

Firearms, and Explosives ("ATF"), Texas Department of Public

Safety ("TDPS"), Arlington Police Department ("APD"), and Fort

Worth Police Department ("FWPD").  TS is the fourth-largest

---

[2]  The undisputed facts are taken from defendant's appendix in support of its motion for summary judgment.  Because plaintiff failed to respond to the motion, the court is permitted to accept defendant's summary judgment evidence as undisputed.  Bookman v. Shubzda, 945 F. Supp. 999, 1002 (N.D. Tex. 1996).

prison gang in the Texas prison system, and its members are involved in criminal activities such as drug trafficking, money laundering, and murder, both in and out of prison. The investigators learned that TS members, including Aguilar, Jr., were actively involved in trafficking cocaine, among other criminal activities, and that Aguilar, Jr., was known to keep firearms and large quantities of cocaine in his apartment. In October 2008, an arrest warrant was issued for Aguilar, Jr. on charges of drug trafficking, and a search warrant was issued for Aguilar Jr.'s Arlington, Texas apartment for guns, drugs, and records of drug trafficking.

ATF was assigned to execute the arrest and search warrants, and, in the days leading up to the execution of the warrants, Senior Special Agent LEO 3[3] ("LEO 3") gathered information about Aguilar, Jr., surveyed and researched the area surrounding Aguilar, Jr.'s apartment, and consulted with other agents and officers to formulate an ATF operational plan. LEO 3 advised special agents from the FBI and ATF, and officers from the APD, FWPD, and TDPS, that the team would execute the warrants at Aguilar, Jr.'s residence; that the residence was located in a

---

[3] Identities of the law enforcement officers have been redacted, and each officer is being identified by the acronym "LEO" for "law enforcement officer," followed by a number that specifically identifies the individual officer.

high-crime area; that Aguilar, Jr. would be present at the
residence at that time and was known to carry firearms; that
Aguilar, Jr.'s girlfriend and two children may be present at the
residence; that Aguilar, Jr. was the local leader of TS; and that
Aguilar, Jr. had a substantial criminal history including several
felony arrests and convictions for violent crimes such as
burglary of a motor vehicle, unlawful carrying of a weapon, and
aggravated robbery/murder.  The agents and officers were divided
into an entry team, search team, perimeter security team, and an
on-scene commander.

Between approximately 5:00 a.m. and 5:45 a.m. on October 23,
2008, LEO 1 and LEO 4 conducted surveillance at Aguilar, Jr.'s
apartment complex, after which they assembled with the rest of
the agents and officers for a briefing and to get into position.
Police identifiers were clearly marked on all clothing and police
equipment worn by all agents and officers.  Once they were in
position, around 6:05 a.m., LEO 3 instructed LEO 1 to knock and
announce the officers' presence, and LEO 1 "knocked on the door
with [his] right fist and forearm, approximately 4-5 times, with
strong force and announced our presence by yelling, 'POLICE WITH
A SEARCH WARRANT, OPEN THE DOOR.  POLICE WITH A SEARCH WARRANT
OPEN THE DOOR!'" App. at 29.  There was no response from inside
the apartment, and LEO 6 hit the front door with a battering ram

5

twice, causing the door to open into the apartment, which was
dark other than a dim light from inside the kitchen.

At that time, LEO 1, who was wearing a vest clearly marked
with "ATF" and "POLICE" on the front and back, and an ATF badge,
raised his M-4 carbine rifle and activated the front light on it
to illuminate his path into the apartment.  LEO 1 entered the
apartment and immediately saw the silhouette of a person standing
just outside the kitchen area, several feet away.  LEO 1 noticed
that the person, later identified as Aguilar, Sr., "was standing
looking directly at me with his right hand down by his side in a
tight fist," and also noticed that "his left arm was bent at the
elbow with his hand hidden from my view under his shirt, so I was
unable to verify what the person was doing with his hands."  App.
at 29.  LEO 1 stopped and gave loud verbal commands of "POLICE,
GET ON THE GROUND . . . POLICE, GET ON THE GROUND . . . GET ON
THE GROUND," and also shouted commands in Spanish.  App. at 29,
107.  Aguilar, Sr. did not attempt to get on the ground, raise
his hands, or otherwise comply with LEO 1's commands, but
instead, Aguilar, Sr. lunged at LEO 1.  LEO 1 hunched down with
his right side bracing the door frame, as he had been trained to
do, switched his M-4 selector switch to "fire," and pressed the
trigger one time.

After firing, LEO 1 was temporarily blinded by the muzzle

6

flash, and he threw his left arm out to block any further attack from Aguilar, Sr., causing his light to turn off. LEO 1 could see Aguilar, Sr.'s figure stumbling backwards. Next, LEO 1 turned his light back on and went into the kitchen, continuing to give commands to Aguilar, Sr. in Spanish, until he realized that Aguilar, Sr. had been shot. The other agents quickly followed LEO 1 into the apartment and cleared it, giving commands to the apartment's other occupants, who were emerging from their bedrooms. Agents also had called for medical services immediately after the shooting had occurred, and LEO 2 and LEO 5 administered medical aid to Aguilar, Sr. until emergency medical personnel arrived and stated that Aguilar, Sr. was deceased. Statements of agents and occupants of the apartment were taken.

APD secured the apartment and obtained a search warrant to process the apartment for the death investigation. Aguilar, Sr.'s body was transported to the Tarrant County Medical Examiner's office, where an autopsy was performed. ATF also conducted an internal administrative review of the shooting and determined:

> The facts and circumstances surrounding the event have been thoroughly documented, and a clear record of the incident has been established.

> The ATF employee [LEO 1] was acting within his scope of employment and authority.

The actions taken by the ATF employee were in
compliance with ATF and [Department of Justice]
policies and procedures.

The facts of this incident were presented to a Tarrant
County Grand Jury on March 17, 2009, and the grand jury
returned a "no bill" on the case.

There was no evidence of wrongful or inappropriate
action on the part of an employee.

App. at 156.

## IV.

## Analysis

A.    Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides
that the court shall grant summary judgment on a claim or defense
if there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law.   Fed. R. Civ.
P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247
(1986).   The movant bears the initial burden of pointing out to
the court that there is no genuine dispute as to any material
fact.   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986).
The movant can discharge this burden by pointing out the absence
of evidence supporting one or more essential elements of the
nonmoving party's claim, "since a complete failure of proof
concerning an essential element of the nonmoving party's case
necessarily renders all other facts immaterial."   Id. at 323.

8

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324. See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). Unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).

The fact that a non-movant has failed to respond to a motion for summary judgment is not itself a basis for granting the motion; however, when a movant has made a properly supported motion for summary judgment, the non-movant must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Celotex Corp., 477 U.S. at 324) (internal quotations omitted); Bookman, 945 F. Supp. at 1002. Although the court must draw all inferences in favor of the party

9

opposing the motion, such party cannot establish a genuine issue
of material fact by resting only on the allegations of the
pleadings.  <u>Hulsey v. Texas</u>, 929 F.2d 168, 170 (5th Cir. 1991).
"It follows that if a plaintiff fails to respond to a properly
supported summary judgment motion, [he] cannot meet [his] burden
of designating specific facts showing that there is a genuine
issue for trial."  <u>Bookman</u>, 945 F. Supp. at 1004.  Further, when
a non-movant fails to respond to a motion for summary judgment,
the court is permitted to accept the movant's evidence as
undisputed.  <u>See</u> <u>Eversly v. Mbank Dallas</u>, 843 F.2d 172, 174 (5th
Cir. 1988); <u>Bookman</u>, 945 F. Supp. at 1002.

B.   <u>Federal Tort Claims Act</u>

     The United States is immune from suit, except to the extent
that it has waived such sovereign immunity.  <u>FDIC v. Myers</u>, 510
U.S. 471, 475 (1994).  The FTCA is a limited waiver of sovereign
immunity and, subject to some specific exceptions, the FTCA gives
federal district courts jurisdiction over claims against the
United States for money damages for injury or loss of property,
or personal injury or death caused by the negligent or wrongful
act or omission of any employee of the government while acting
within the scope of his office or employment, under circumstances
where the United States, if a private person, would be liable to
the claimant in accordance with the law of the place where the

act or omission occurred.  <u>Sheridan v. United States</u>, 487 U.S.

392, 398 (1988); <u>Crider v. United States</u>, 885 F.2d 294, 296 (5th

Cir.1989); 28 U.S.C. § 1346(b).  When law enforcement functions

are involved, the inquiry into governmental liability must

include an examination of the liability of state entities under

like circumstances.  <u>Crider</u>, 885 F.2d at 296.  Thus, Texas law

applies to determine whether defendant may be held liable for

Aguilar, Sr.'s death.

C.   <u>Application of Texas Law to Facts</u>

     Plaintiffs allege that LEO 1 acted negligently in shooting

and killing Aguilar, Sr.  Defendant argues that LEO 1 was not

negligent and that, because plaintiffs failed to procure expert

testimony regarding the standard of care applicable to

defendant's agents, plaintiff cannot prove negligence.  Defendant

also argues that it is immune from liability under Texas law

because LEO 1's actions were justified and reasonable.  The court

agrees that LEO 1's actions were justified and reasonable and the

motion for summary judgment should be granted on that basis, and

thus, the court need not address the issue of expert testimony.

     Under Texas law, the elements of negligence are (1) a legal

duty owed by one person to another; (2) breach of that duty; and

(3) damages proximately caused by the breach.  <u>Nabors Drilling,</u>

<u>U.S.A., Inc. v. Escoto</u>, 288 S.W.3d 401, 404 (Tex. 2009).  Texas

authorizes civil actions both for wrongful death and for survival
actions for personal injury when the injured person dies. Tex.
Civ. Prac. & Rem. Code Ann. §§ 71.002, 71.021; Quijano v. United
States, 325 F.3d 564, 567 (5th Cir. 2003).  However, under Texas
law, a law enforcement officer who uses deadly force that is
justified under Chapter 9 of the Texas Penal Code is immune from
civil liability for the death that results, regardless of whether
there was negligence.  Carnaby v. City of Houston, 636 F.3d 183,
188-89 (5th Cir. 2011).  Section 9.51 of the Texas Penal Code
provides:

> (a) A peace officer, or a person acting in a peace
> officer's presence and at his direction, is justified
> in using force against another when and to the degree
> the actor reasonably believes the force is immediately
> necessary to make or assist in making an arrest or
> search, or to prevent or assist in preventing escape
> after arrest, if:
>
> > (1) the actor reasonably believes the arrest or
> > search is lawful or, if the arrest or search is
> > made under a warrant, he reasonably believes the
> > warrant is valid; and
> >
> > (2) before using force, the actor manifests his
> > purpose to arrest or search and identifies himself
> > as a peace officer or as one acting at a peace
> > officer's direction, unless he reasonably believes
> > his purpose and identity are already known by or
> > cannot reasonably be made known to the person to
> > be arrested.
>
> *   *   *
>
> (c) A peace officer is justified in using deadly force
> against another when and to the degree the peace

officer reasonably believes the deadly force is
immediately necessary to make an arrest, or to prevent
escape after arrest, if the use of force would have
been justified under Subsection (a) and:

>    (1) the actor reasonably believes the conduct for
>    which arrest is authorized included the use or
>    attempted use of deadly force; or
>
>    (2) the actor reasonably believes there is a
>    substantial risk that the person to be arrested
>    will cause death or serious bodily injury to the
>    actor or another if the arrest is delayed.

Tex. Penal Code Ann. § 9.51.  Deadly force is "force that is
intended or known by the actor to cause, or in the manner of its
use or intended use is capable of causing, death or serious
bodily injury."  Tex. Penal Code Ann. § 9.01.  The Texas Civil
Practices and Remedies Code further provides:

>    A defendant who uses force or deadly force that is
>    justified under Chapter 9, Penal Code, is immune from
>    civil liability for personal injury or death that
>    results from the defendant's use of force or deadly
>    force, as applicable.

Tex. Civ. Prac. & Rem. Code Ann. § 83.001.

The uncontradicted evidence in the record, including
approximately seven affidavits, ten declarations pursuant to 28
U.S.C. § 1746, the search warrant and application for search
warrant, the arrest warrant, and defendant's expert designation
and report, shows that LEO 1 satisfied the requirements of §§
9.51(a) and (c).  LEO 1 and the other agents and officers, both
state and federal, are considered "peace officers" within the

meaning of the statute.  <u>Villafranca v. United States</u>, 587 F.3d
257, 264 (5th Cir. 2009).  The evidence shows that LEO 1 arrived
to execute a valid arrest warrant at the location where the
target of the arrest, Aguilar, Jr., who was believed to be armed
and dangerous, resided.  The agents were also at the location
pursuant to a valid search warrant for the residence.  At all
relevant times, LEO 1 and the other officers wore clothing that
specifically and clearly identified them as law enforcement
officers.  Prior to entering the residence, LEO 1 forcefully
knocked on the door approximately four to five times, and yelled,
"POLICE WITH A SEARCH WARRANT, OPEN THE DOOR.  POLICE WITH A
SEARCH WARRANT OPEN THE DOOR!"  App. at 29, 37, 47, 54-55, 63,
71, 80, 107, 116, 118, 127, 145, 147.  When there was no response
from inside the residence, the agents forcibly opened the door,
and LEO 1 entered and immediately encountered Aguilar, Sr.,
standing a few feet away with his right fist clenched and his
left hand hidden under his shirt.  LEO 1 repeatedly shouted to
Aguilar, Sr., "POLICE, GET ON THE GROUND;" however, Aguilar, Sr.
did not get on the ground, but instead lunged directly at LEO 1.

It was more than reasonable for LEO 1 to interpret Aguilar,
Sr.'s refusal to obey his commands and sudden lunge toward LEO 1
as an attempt to inflict death or serious bodily injury on LEO 1
and other officers, for LEO 1 to fear for his life, and for LEO 1

14

to determine in a split second that it was "immediately
necessary" to fire his weapon.  See DeLuna v. City of Rockford,
447 F.3d 1008, 1012-13 (7th Cir. 2006) (concluding that officer
shooting an individual was justified when the individual in
lunged toward an officer from about 5-15 feet away and the
officer could not tell if the individual was armed, and also
stating that the officer "need not wait until there is a physical
struggle for control of his weapon before a situation presents an
imminent danger of serious physical injury"); Blossom v
Yarbrough, 429 F.3d 963, 967-68 (10th Cir. 2005) (determining
that an officer's action in shooting an individual was justified
when the individual refused to comply with requests from law
enforcement to get on the ground, continued approaching the
officer, and it was unclear whether the individual was armed);
Fraire v. City of Arlington, 957 F.2d 1268, 1276-77 (5th Cir.
1992).

     The evidence produced by defendant and uncontradicted by
plaintiffs establishes that LEO 1's use of force was justified
under § 9.51, as LEO 1 reasonably believed that the search and
arrest warrants he was executing were valid and manifested his
purpose to search the residence, clearly identified himself and
other officers as law enforcement agents with a warrant, and
reasonably believed that there was a substantial risk that

Aguilar, Sr. would cause death or serious bodily injury if LEO 1 did not fire his weapon. See <u>Villafranca</u>, 587 F.3d at 265-66 (explaining elements for justification under § 9.51). Plaintiffs have failed to produce or identify any evidence in the record to contradict any of defendant's evidence, and have failed to produce or point to any evidence whatsoever that could raise a material issue of fact sufficient to withstand summary judgment.

V.

<u>Order</u>

Therefore,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action brought by plaintiffs against defendant, be, and are hereby, dismissed with prejudice.

SIGNED April 30, 2013.

_____

JOHN McBRYDE
United States District Judge

16